# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR329 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| EDWARD R. HILLS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motions of the United States of America (the "government") and the Board of Trustees of the MetroHealth System, dba MetroHealth Medical Center ("MetroHealth") to quash a subpoena issued by defendant Edward R. Hills ("Hills"). (Doc. No. 270 ["Gov. Mot."]; Doc. No. 278 ["MetroHealth Mot."].) For the reasons that follow, the motions to quash are **GRANTED**.

I. **BACKGROUND**

Hills is one of four defendants charged in a thirty-three count indictment with participating in conspiracies to receive kickbacks in connection with federal healthcare programs, to violate the Hobbs Act, to commit honest services and money and property mail and wire fraud, to obstruct justice, and to tamper with witnesses. Hills is also charged with making false statements on federal income tax returns. Hills and his co-defendants were employed as dentists for MetroHealth, and it is the government's theory that defendants used their positions with MetroHealth to enrich themselves at the expense of MetroHealth and others. Pertinent to the

present motions to quash, the government has charged Hills with receiving kickbacks for referring MetroHealth patients to private dental clinics, including those clinics owned and operated by Hills' co-defendants. The trial is set to begin on June 21, 2018, with jury selection. Opening statements are slated to begin on June 25, 2018.

On May 16, 2018, and pursuant to Fed. R. Crim. P. 17, counsel for defendant caused a subpoena to issue to MetroHealth commanding the custodian of records to bring the following to court: (1) a complete copy of the investigative file of the "Ononmous" complaint against the individual identified in the indictment as CW9; (2) a complete copy of the investigation into complaints by residents alleging solicitation of bribes; (3) a complete copy of the investigative file of the investigation leading to the dismissal of CW9, Alqsous, Al-Madani, and MHE1 (MetroHealth Employee 1); and (4) a copy of the critical incident report relating to the 2014 death of a MetroHealth dental patient. (Doc. No. 270-1 ["Subp."], Ex. A.) The subpoena identified June 25, 2018 as the date the documents were to be delivered to the court.

The government and MetroHealth each moved to quash the subpoena on a variety of grounds, including that it is overly broad, that it seeks irrelevant and inadmissible evidence, and that it represents an impermissible fishing expedition for discovery. The government also complains that the subpoena is designed to circumvent the requirements of Fed. R. Crim. P. 16 and the Jencks Act, and MetroHealth separately argues that the requested material is protected from disclosure by one or more privileges or state laws.

Defendant Hills opposes the motions and makes the following arguments: (1) the government lacks standing to challenge the subpoena; (2) a relaxed standard (not that set forth in *United States v. Nixon*, 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)) applies to the

subpoena because it was issued to a third-party for use at trial; (3) the requested information is needed for impeachment; and (4) the incident report, at least, should be produced because it shows a legitimate, non-corrupt reason for the patient referrals. Hills also challenges MetroHealth's individual reasons for seeking to quash. (Doc. No. 283 ["Opp'n"].)

## II. DISCUSSION

At the outset, the Court need not address the question of whether the government has standing because MetroHealth certainly has standing, and it has adopted all of the arguments raised by the government. Hills' argument that a more relaxed standard should guide the Court's analysis can also be disposed of in short order. Hills suggests that the factors identified in *Nixon* should not apply to his subpoena because the subpoena was issued to a third party. In support, he relies primarily upon a district court decision from the Southern District of New York, *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008), which held that a Rule 17(c) subpoena to a third party need only comply with the lesser standard that would require the defendant to show that the subpoena was "(1) reasonable, construed as material to the defense, and (2) not unduly oppressive for the producing party to respond." *Id.* (internal quotation marks omitted). The court in *Tucker* held that the *Nixon* factors do not apply when the subpoena is issued by a criminal defendant, on the eve of trial, to a non-party, and where the defendant has an articulable suspicion that the documents may be material to his defense. *Id*.

The decision in *Tucker* represents an extreme minority position that is generally not accepted even in district courts within the Second Circuit. *See United States v. Barnes*, No. S9 04 CR 186(SCR), 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) ("Though the *Tucker* [c]ourt found this relaxed standard appropriate, it is not the prevailing law. Indeed, all district courts

within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense.") (citation omitted); *see, e.g., United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) ("Although the *Nixon* Court did not decide whether this four-part test applies to subpoenas served on third-parties in particular, courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties.") (collecting cases). Courts within the Sixth Circuit apply *Nixon* to subpoenas issued to third-parties. *See, e.g., United States v. Al-Amin*, No. 1:12-cr-50, 2013 WL 3865079, at *8 (E.D. Tenn. July 25, 2013) (rejecting *Tucker* and applying *Nixon*); *see also United States v. Vassar*, 346 F. App'x 17 (6th Cir. 2009) (applying *Nixon* to subpoena to third-party).

Hills also argues that the *Nixon* factors do not apply to subpoenas issued for use at trial, rather than for pretrial use, noting that he has identified the first day of trial as the date the documents are to be returned. He cites the unreported decision in *United States v. Bunch*, No. 3:09-CR-57, 2009 WL 3245773, at *4 (E.D. Tenn. Oct. 2, 2009) for the proposition that "the factors governing the propriety of the issuance of a Rule 17(c) subpoena duces tecum for *pretrial* production of documents do not inform the Court's analysis of whether subpoenas directing appearance and production of documents *at trial* should be quashed." (emphasis in original) However, *Bunch* relied on the Sixth Circuit's decision in *United States v. Justice*, 14 F. App'x 426, 433 (6th Cir. 2001), which, in turn, relied on *Nixon* and further held that "[a] subpoena duces tecum must be reasonable, specific, and the documents requested must be relevant." Moreover, courts within this circuit have held that "[t]he same general standard [governed by *Nixon*] applies to subpoenaed production of documents at the time of trial." *United States v.*

*Peavler*, No. 3:15-CR-14-GFVT-REW, 2017 WL 1018304, at *2 (E.D. Ky. Mar. 10, 2017) (citations omitted).

In *Nixon*, the Supreme Court required parties moving for a Rule 17(c) subpoena duces tecum in a criminal matter to show: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the parties cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700. The Supreme Court further required a showing of relevancy, admissibility, and specificity before issuance of a pretrial subpoena duces tecum. *Id.* at 700. The decision to quash a Rule 17(c) is left to the discretion of the trial court. *United States v. Hughes*, 895 F.2d 1135, 1145 (6th Cir. 1990) (citation omitted).

Here, the first three categories of documents—each seeking a complete investigative file—fail to meet the specificity requirement of *Nixon*. *See Peavler*, 2017 WL 1018304, at *3 (a blanket request for all documents in a file fails to meet the specificity requirement and suggests that it has been issued for an improper fishing expedition); *Barnes*, 2008 WL 9359654, at *4 ("The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence."); *see also Vassar*, 346 F. App'x at 24 (approving of district court's quash of subpoena that sought internal investigative files) (citation omitted). Because they are clearly intended to facilitate a fishing expedition, the first three categories fail to comply with the requirements of Rule 17 and *Nixon, supra*.

Additionally, Hills' argument that he needs the first, second, and third category of requested documents for impeachment purposes fails as *Nixon* made clear that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. Further, with respect to the second category of records, Hills notes that these documents were turned over to the FBI and Special Agent Spielmaker relied upon them during his investigation. However, the Sixth Circuit has held that "internal documents are not required to be produced when the witness' testimony at trial provides the information in the documents." *Hughes*, 895 F.2d at1146 (citation omitted). Defendant Hills will have the opportunity to cross examine Special Agent Spielmaker on his investigation.[1]

The fourth and final category—related to the incident report generated after the 2014 death of a dental patient—is a little different. Hills argues that he should be entitled to subpoena the report because it formed the basis for Hills' legitimate reason for referring the patients in question in this case. According to Hills, the report recommended that some patients should be referred to dental practices outside MetroHealth due to the fact that the department was overwhelmed with a tremendous influx of patients in 2014. He maintains that the patients that the government claims were referred in exchange for kickbacks were actually, and lawfully, referred based upon the incident report's recommendation. In a prior ruling announced on the record in a hearing on June 13, 2017, the Court determined that defendants were entitled to offer evidence that they referred these patients for legitimate reasons. Thus, in order to determine if

---

[1] Moreover, to the extent that these categories of documents contain Jencks Act statements from other witnesses, the government has represented that it will comply with the timing requirements set forth in the Jencks Act and will, in some cases, even make the evidence available before the witness testifies.

defendant Hills' representations regarding the finding in the incident report were true, the Court instructed MetroHealth to submit the incident report for an *in camera* inspection.

The Court has reviewed the incident report *in camera* and finds that it is not relevant to Hills' defense theory as to the reason why Hills referred certain patients to private dental clinics. The incident report indicated that the dental patient's death may have been linked to certain medication she was taking. The recommendations contained in the incident report all related to the education of medical staff in identifying and verifying patient medical information. There was no indication that a backlog of cases contributed, in any way, to the patient's death, and there were no recommendations that future patients be referred to other clinics due to an influx of patients at MetroHealth. Because the document is not relevant, the subpoena fails to satisfy the *Nixon* standard with respect to the last category of documents requested.[2]

III. CONCLUSION

For all of the foregoing reasons, the motions to quash (Doc. Nos. 270 and 278) are **GRANTED**.

**IT IS SO ORDERED**.

Dated: June 19, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[2] Because the Court finds that MetroHealth will not be required to produce this document, the Court need not reach MetroHealth's argument that the incident report was protected from production under Ohio Rev. Code § 2305.252.