# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16CR329 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| EDWARD R. HILLS, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

The opening statements in this federal bribery action are set to begin on June 25, 2018. On June 13, 2018, the Court announced its rulings in open court on all but one of the pending motions in limine. After receiving supplemental briefing, the Court now addresses the then-remaining motion in limine of plaintiff United States of America (the "government") to preclude defendants from offering evidence relating to the history of referrals of dental patients between MetroHealth Medical Systems ("MetroHealth") and Buckeye Family Dental ("BFD"), the private dental clinic owned and operated by certain defendants in this case. (Doc. No. 258 ["Gov. Mot."]; Doc. No. 268 ["Opp'n"].) For the reasons set forth below, the government's motion to preclude this evidence is **GRANTED**.

## I. BACKGROUND

The four defendants in this action, all dentists formerly employed by MetroHealth, are charged with participating in several criminal conspiracies designed to either enrich defendants through kickbacks and bribes at the expense of MetroHealth and others or to conceal the criminal activity. Pertinent to the present motion, defendant Edward Hills ("Hills") is charged with

receiving unlawful kickbacks in exchange for referring MetroHealth dental patients to BFD, the private dental clinic of defendants Sari Alqsous ("Alqsous") and Yazan Al-Madani ("Al-Madani"). The government argues that defendants should not be permitted to offer evidence that, on other occasions not the subject of the indictment, Hills and others referred patients to MetroHealth and other institutions for legitimate, medically sound reasons. Additionally, the government argues that the fact that some of the patients initially referred to BFD were eventually referred back to MetroHealth or elsewhere has no bearing on the question of whether the initial referrals were made in exchange for unlawful kickbacks. The government further anticipates that defendants will attempt to offer evidence of the general referral process at MetroHealth and argues that such evidence would be both irrelevant and likely to launch a trial within a trial on hospital procedure and administration.

In initial briefing and at oral argument, defendants argued that they should be able to offer evidence of MetroHealth's referral process and specific instances of referrals to (or back to) MetroHealth and other entities because such evidence goes to Hills' intent, an element of the alleged criminal fraud acts. They argued that this evidence is not impermissible "good acts" evidence but is important *res gestae*, such as evidence showing that co-defendants often referred these same patients back to MetroHealth or elsewhere to receive prompter or better care. They insist that they have a right to explore alternative, benign explanations for the referrals. They distinguish the proffered evidence from "good acts" evidence on the ground that they are not trying to show that on other occasions not charged in the indictment they acted lawfully. "Here, Defendants want to show that as to *the very alleged scheme, people and entities the Government is alleging*, namely, referrals between MetroHealth and [BFD] involving Drs. Hills, Alqsous, and

2

Al-Madani, there was no scheme at all, but a normal, patient-centered, professional course of dealing unmotivated by kickbacks." (Opp'n at 2252, emphasis in original.)

The Court permitted defendants to proffer the referral evidence to the Court for review (*see* Doc. No. 295 ["Opp'n Suppl."]; Doc. No. 299 ["Opp'n Sealed Ex."]; Doc. No. 302 ["Opp'n Ltr."]) and allowed the government to file a supplemental response (Doc. No. 301 ["Mot. Suppl."].) The Court has reviewed these subsequent submissions and is prepared to rule on the admissibility of this evidence at trial.

## II. MOTION IN LIMINE STANDARD

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and to allow the parties to focus remaining preparation time on issues that will in fact be considered by the jury. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. General Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id*. Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys.,*

*Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Lands Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

### III. DISCUSSION

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina,* 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). Being allowed to present "relevant evidence is integral to that right." *Baze v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004) (citing *Taylor v. Illinois*, 484 U.S. 400, 408-09, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988)). A criminal defendant does not, however, "have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence." *Taylor*, 484 U.S. at 410. Rule 401 provides that evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.

Evidence of noncriminal activities offered by a defendant to disprove an aspect of the government's case is a subset of "other acts" evidence known as "reverse 404(b)" evidence. The Sixth Circuit has held that the admission of "reverse 404(b)" evidence is subject to the same standard Rule 404(b) analysis applicable to "other acts" evidence most often offered by the government. *See United States v. Clark*, 377 Fed. App'x 451, 458 (6th Cir. 2010); *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004).

Evidence that an individual acted lawfully on other occasions not charged in the

4

indictment is generally inadmissible in that it does not negate the charge that he acted with criminal intent on another occasion. *See United Sates v. Daulton*, 266 F. App'x 381, 384 (6th Cir. 2008) (evidence that defendant prepared non-fraudulent tax returns in years not charged in the indictment was impermissible reverse Rule 404(b) "good acts" evidence); *United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *see, e.g., Ellisor*, 522 F.3d at 1255 (In fraud trial involving bogus entertainment event, evidence that defendant had produced a prior legitimate event was not relevant to "negate criminal intent"). It may be probative, however, where a defendant is alleged to have "always" or "continuously" committed the acts alleged. *United States v. Damti*, 109 F. App'x 454, 455-56 (2d Cir. 2004); s*ee also Daulton*, 266 F. App'x at 386 (quoting *United States v. Scarpa*, 913 F.2d 993, 1011 (2d Cir. 1990) ("Evidence of noncriminal activities 'would only be relevant if the indictment charged the defendants with ceaseless criminal conduct.'")); *United States v. Dobbs*, 506 F.2d at 447 (finding reverse 404(b) evidence not relevant where the defendant was not charged with a scheme).

The government has not charged that defendants always or continuously exchanged kickbacks for patient referrals, and defendants do not suggest that they are attempting to offer evidence of other or subsequent referrals to combat such a theory of guilt. Instead, at oral argument, defense counsel explained that defendants plan to offer evidence of other referrals to corroborate their defense that there was a legitimate, non-corrupt, reason for the referrals in question in this case. According to counsel, by showing a "slightly broader pattern of referrals back and forth" between MetroHealth and BFD, defendants will be able to cast doubt on the government's theory that the referrals at issue in the indictment were motivated by the receipt of

5

unlawful kickbacks.[1]

In their supplement, defendants offered dental records relating to seven patients. The first four patients are from the group of thirty-six patients that the government now contends were referred by Hills from MetroHealth to BFD in exchange for kickbacks.[2] Of the four highlighted by defendants, one patient was referred back to MetroHealth so that he could receive anesthesia during a dental procedure, one was subsequently referred to another clinic for orthodontics, and two were instructed to seek follow up medical treatment with a primary care physician.[3] Defendants suggest that the "back and forth" activity of these patients demonstrates a pattern of referrals for legitimate, patient-focused reasons.

The Sixth Circuit has had occasion recently to address the admissibility of similar "good acts" evidence. In *United States v. Buendia*, No. 17-1666, 2018 WL 2214710 (6th Cir. May 15, 2018), an elementary-school principal was charged with receiving kickbacks in exchange for

---

[1] In their supplemental response, defendants elaborate on their defense theory, stating that this "referral-pattern evidence is *res gestae* that goes to the core of the defense—showing a lack of conspiratorial agreement, while also bearing on motive, knowledge, purpose, and intent regarding the very charges and overt acts that the government has charged." (Opp'n Suppl. at 2577.)

[2] Much of defendants' supplemental response was devoted to their complaint that the government appears to have shifted its focus away from certain patient referrals. In particular, defendants complain that, after the hearing on the present motion, one of the three patients originally identified by the government—Clarissa Barnett—admitted that she had been referred to BFD "not by anyone at MetroHealth, but by her child's daycare provider." (Opp'n Suppl. at 2574.) According to defendants, after the Barnett interview, the government shifted gears and focused on 36 patients during a particular time period. Defendants have not indicated that they intend to offer evidence of Barnett's referral at trial, and the present ruling on the admissibility of pattern evidence is not intended to address the admissibility of such evidence. The government has recently filed a motion in limine relating to the admissibility of evidence calling into question the FBI's investigation (Doc. No. 305), and the Court anticipates that the admissibility of evidence relative to this and other patients that may have previously been the focus of the FBI's investigation will be addressed when it rules on the government's latest in limine motion.

[3] On August 22, 2014, Patient B.T. was referred back to MetroHealth, at his mother's request, so that he could receive anesthesia in a hospital setting in the event that there were any complications. On October 13, 2014, Patient T.T. was referred to Case Western Reserve University for orthodontic care. After initial dental exams in 2014, Patient M.L. was advised to see a primary care physician and Patient J.M. was strongly encouraged to follow up with his primary care physician for his high blood pressure. (Opp'n Suppl. at 2578-79, citing attached dental records.)

placing fraudulent school supply orders with federally subsidized funds. According to the government's theory, defendant placed school supply orders with a contractor who shorted the school and made up the difference with gift cards he gave directly to defendant. At trial, the district court excluded evidence that defendant used some of the gift cards for school-related expenses. In affirming her conviction under 18 U.S.C. § 666 for "corruptly soliciting" kickbacks, the court found that the district court properly excluded the "other acts" evidence as irrelevant.[4] While acknowledging that defendant's criminal intent was an element of the offense for federal-programs bribery, the court reasoned that "regardless of how [defendant] might have eventually spent the kickback money, she 'corruptly solicit[ed]" it because, by awarding contracts to the [supplier] in exchange for kickbacks, she subverted the normal bidding process in a manner inconsistent with her duty to obtain goods and services for her school at the best value." *Buendia*, 2018 WL 2214710, at *2.

Similarly here, defendants are charged with corruptly soliciting kickbacks in exchange for patient referrals. By trading referrals for the payment of kickbacks, defendants are alleged to have subverted the normal referral process. The fact that some of the patients may have been referred *back* to MetroHealth (or to other clinics) for certain dental procedures, or to a primary care physician for treatment for high blood pressure, does not make it more or less probable that the initial referral was unlawful. *See id.* at *1 (evidence of how the kickbacks were spent "would therefore have made no fact of consequence more or less probable"); *see also United States v.*

---

[4] Like the defendants herein, the defendant in *Buendia* argued that evidence of what she did with the alleged kickbacks was relevant to whether she had corruptly solicited the kickbacks in the first place. *See id.* at *1-2 (Defendant "argues that she lack the requisite corruptness because, as [the evidence] would have shown, she spent the kickbacks to benefit the school.") (Opp'n Suppl. at 2579 ["If a criminal conspiracy to refer patients truly exists, one would reasonably expect [BFD] to keep in-house these patients from the referral-scheme timeframe."].)

*Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants") (citations omitted); *United States v. Sorich*, 523 F.3d 702, 710 (7th Cir. 2008) ("Robin Hood may be a noble criminal, but he is still a criminal"). Defendants were not charged with performing or ordering unnecessary procedures, or engaging in some type of criminal medical malpractice once they received the referrals. The fact that they may have decided for medically-sound or patient-focused reasons to refer a patient back to MetroHealth or elsewhere for the completion of a particular procedure, or follow-up *medical* care, has no bearing on whether they initially received the patient through corrupt means. Because the evidence lacks relevance, the Court will not permit this "other acts" evidence to be offered at trial.

The other three examples defendants seek to admit involve patients outside of the group of thirty-six identified by the government as falling within the conspiracy. Similar to the first group, these patients were referred by BFD elsewhere (in each of these cases the referral was always to MetroHealth) in order to receive dental or medical treatment not available at BFD. Patient J.M. was referred to MetroHealth on March 28, 2014 because the patient's mother wanted the procedure performed in an operating room with general anesthesia. Patient W.M. was referred on July 17, 2014 to MetroHealth for review of a tooth extraction, and Patient S.S. was referred on April 14, 2014 to MetroHealth for evaluation of a mass. (Opp'n Suppl. at 2579, citing attached dental records.)

While defendants once again attempt to cast the evidence of unrelated referrals as "pattern evidence," the fact remains that defendants are attempting to use extrinsic evidence of other acts to show a propensity for non-criminal behavior. As the Seventh Circuit has noted,

"[p]attern-evidence *is* propensity evidence, and it is inadmissible unless the pattern shows some meaningful specificity or other feature that suggests identity or some other fact at issue." *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) (citing *United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir. 1987) ("Unless something more than a pattern and temporal proximity is required, the fundamental rule is gone. This is why 'pattern' is not listed in Rule 404(b) as an exception.") (emphasis in original).) "[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *See Daulton*, 266 F. App'x at 386 ("Rule 404(b) prohibits the use of extrinsic evidence of other crimes, wrongs, or acts in order to show that a person acted in conformity therewith.") (quotation marks and citation omitted); *United States v. Robinson*, 272 F. App'x 421, 430 (6th Cir. 2007) ("A person's propensity to act in a certain way is not a ground for the admission of prior act evidence under Rule 404(b)."); *United States v. Dimora*, 843 F. Supp. 2d 799 (N.D. Ohio 2012) (evidence that a public official had performed his official duties on other occasions without receiving additional remuneration was not relevant to charges of federal bribery); *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (evidence of no criminal activity on certain trips to Jamaica was not admissible to show no criminal conduct on other trips).

In *Dimora*, this Court precluded the defendant, a public official who was charged with engaging in bribery and kickback schemes, from offering evidence of specific instances wherein he performed his official duties in a lawful manner. *Dimora*, 843 F. Supp. 2d at 839 (evidence that defendant acted lawfully on other occasions, "would not negate allegations that he acted corruptly on those occasions set forth in the Indictment"). Defendants suggest that, unlike the defendant in *Dimora*, they are not trying to "support a character of goodness or lawfulness in an

attempt to show their conformity with such traits." (Opp'n Suppl. at 2581.) Instead, they claim that they will offer this "other acts" evidence to corroborate "the alternative, true reason for any referrals: the patients' interests." (*Id.*)

Yet by relying on specific instances of lawfulness not charged in the indictment, defendants are attempting to draw the inference that the charged acts must also be lawful. It is, therefore, still impermissible propensity evidence. The fact that they broadly argue that any legitimate referral, no matter how irrelevant to the charges in this case, shows a "pattern" does not change this conclusion. The Court fails to see how unrelated referrals for specific procedures that BFD was unable to perform, or referrals to allow for *medical* care that is not available in any private dental clinic, make it any more or less likely that defendants participated in the charged kickback scheme. Accordingly, the Court is not inclined to permit defendants to offer evidence from this second group of patients.

Further, even if this evidence was admissible under Rule 404(b), it would still be subject to analysis under Rule 403. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). Rule 403 requires the court to "determine whether the 'other acts' evidence is more prejudicial than probative." *United States v. Lattner*, 385 F.3d 947, 955 (6th Cir. 2004). Any probative value of this evidence is substantially outweighed by the likelihood of prejudice and jury confusion. In particular, the Court finds that broadening the scope of the evidentiary presentation to include unrelated referrals and post-referral transfers will result in a policy debate on medical administration and distract the jury from the pertinent question of whether the initial referrals in question were made with corrupt intent. *See Robinson*, 272 F. App'x at 430-31 (district court did not abuse its discretion in finding that the probative value of evidence relating to unrelated

incidents that the officer discharged his weapon was not substantially outweighed by the risk of jury confusion and prejudice to the government).

That said, defendants will be permitted to offer evidence to demonstrate the initial referrals in question were not corruptly solicited. Because they involve impermissible "good acts" evidence, they will not be permitted to offer evidence showing that some patients were eventually returned to MetroHealth or that other referrals not the subject of the schemes covered in the government's indictment were made without unlawful intent.

## IV. CONCLUSION

For all of the foregoing reasons, the government's motion to exclude "good acts" evidence is **GRANTED.**

**IT IS SO ORDERED**.

Dated: June 24, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**