# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:16-cr-329 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| EDWARD R. HILLS, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendant Sari Alqsous ("Alqsous") has filed a motion for the release of funds used to secure his appearance bond. (Doc. No. 358.) Plaintiff United States of America (the "government") opposes the motion, and has filed a counter-motion, pursuant to 28 U.S.C. § 2044, for an order directing the Clerk to withhold and restrain funds and property posted as bond collateral for Alqsous, and his co-defendants—Edward Hills ("Hills") and Yazan Al-Madani ("Al-Madani")—"to apply said funds to the [d]efendants' financial obligations in connection with their various convictions."[1] (Doc. No. 359 at 1.[2]) Alqsous opposes the government's counter-motion (Doc. No. 376), and the government has filed a reply. (Doc. No. 380.) Defendants Hills and Al-Madani did not file oppositions to the government's counter-motion, and the time for filing such responses has passed.

---

[1] A fourth defendant, Tariq Sayegh, recently filed an unopposed motion to use the funds posted to secure his appearance bond to satisfy his remaining financial obligations. (*See* Doc. No. 633.) On April 13, 2022, the Court granted defendant Sayegh's motion. (Non-document Order, 4/13/2022.) To the extent the government sought to apply Sayegh's appearance bond funds to his outstanding financial obligations, that portion of the government's motion is moot.

[2] Page number references are to the page numbers assigned to each individual document by the Court's electronic filing system, a practice recently adopted by the Court.

## I. BACKGROUND

The facts surrounding this healthcare fraud conspiracy have been addressed on numerous occasions by this Court and the Sixth Circuit, familiarity with these prior decisions is assumed. For purposes of framing the present motions, it is sufficient to note that defendants, all dentists previously licensed to practice in the State of Ohio, were "convicted by a jury of various fraud and related offenses connected to their employment in the Dental Department of a publicly owned hospital located in Cuyahoga County, Ohio." *United States v. Hills*, 27 F.4th 1155, 1169 (6th Cir. 2022).

On October 19, 2016, an indictment was returned charging defendants with engaging in a fraudulent conspiracy comprised of multiple schemes. (Doc. No. 1 (Indictment).) Each man was arrested in connection with the charges, and, on October 25, 2016, defendants were arraigned. At that time, the magistrate judge set bond for Hills at $150,000.00. (Doc. No. 10.) Additionally, bond for Al-Madani was set at $250,000.00 (Doc. No. 11). While Alqsous was originally ordered detained, bond was later set for him at $250,000.00. Defendants posted bond in the amounts set by the Court. (Doc. No. 18 (Appearance Bond for Al-Madani); Doc. No. 19 (Conditions of Release for Al-Madani); Doc. No. 22 (Appearance Bond for Alqsous); Doc. No. 23 (Conditions of Release for Alqsous);  Doc. No. 30 (Appearance Bond for Hills); Doc. No. 31 (Conditions of Release for Hills).) Each defendant signed his particular appearance bond as the sole surety for the cash posted. (*See* Doc. No. 18 at 2; Doc. No. 22 at 2; Doc. No. 30 at 2.)

By agreement of Alqsous and the government, $199,353.17 of the cash bond amount posted on his behalf was refunded to Phyllis DiPiero, and a new bond issued that was secured by $50,646.83 in cash and equity in property owned by Alqsous. (Doc. No. 85 (Motion to Substitute

Property); Doc. No. 87 (Order Substituting Property).) On December 20, 2016, Alqsous signed his substitute appearance bond. (Doc. No. 110.) Like the initial appearance bond, Alqsous filed the substituted bond as the sole surety. (*Id*. at 2.)

On July 27, 2018, after a five-week jury trial, Hills, Alqsous, and Al-Madani were each found guilty of sixteen or more counts. (Doc. No. 337 (Hills Verdicts); Doc. No. 338 (Alqsous Verdicts); Doc. No. 339 (Al-Madani Verdicts).) After the verdicts were received, the Court ordered defendants taken into custody pending sentencing, and Alqsous subsequently moved the Court to release his bond. The government responded with its counter-motion to apply the bond amounts to any financial obligations owed by defendants.[3] The Court conducted sentencing hearings over a number of days. Ultimately, the Court sentenced Hills to an aggregate term of imprisonment of 188 months (Doc. No. 489 (Hills Judgment); Alqsous received an aggregate prison sentence of 151 months (Minutes of Proceedings, 4/11/2019); and Al-Madani received a 121-month sentence (Minutes of Proceedings, 5/2/2019).) The Court reserved the issue of restitution for a later date.

The Court conducted hearings on the issue of restitution over several days in May 2019. At the conclusion of the final hearing held on May 24, 2019, the Court set restitution as to each defendant as follows: Hills' restitution was set at $994,267.88 (Doc. No. 515); Alqsous' restitution was set at $913,841.99 (Doc. No. 517 (Alqsous Judgment), and Al-Madani's restitution was set at

---

[3] On March 13, 2020, the Court conducted a conference call with counsel in an effort to resolve the bond-related motions and directed the parties to confer and attempt to resolve the matter as it pertained to Alqsous' desire to remove the lien from his real property and have the cash portion of the bond released to his fiancé, Jennifer DiPiero. The Court further instructed the parties to contact the Court within two weeks to report on the status of their negotiations. (Minutes of Proceedings, 3/13/2020.) The parties were unable to reach agreement but failed to contact the Court as instructed.

3

$897,934.48. (Doc. No. 519 (Al-Madani Judgment).)[4] Defendants appealed their convictions and sentences, including the orders of restitution. (*See* Doc. Nos. 497, 525, 531.) The outstanding restitution currently owed by each defendant exceeds the amount of the money and properties supporting defendants' appearance bonds.

Defendants Hills, Al-Madani, and Alqsous also filed post-sentencing motions for new trials. (*See* Doc. Nos. 618, 620, 622.) The Court stayed consideration of these motions pending the outcome of defendants' direct appeals. On March 3, 2022, the Sixth Circuit denied defendants' direct appeals, and affirmed the Court's judgments of conviction, sentence, and restitution. *See Hills, supra.*

It appears from the record that, at some time following the entry of final judgment against each defendant, the Court's automated filing system deemed the entire case closed and terminated the then-pending motions. The government subsequently moved for a ruling on Alqsous' motion to release bond (Doc. No. 358) and the government's counter-motion under 28 U.S.C. § 2044 (Doc. No. 359). (Doc. No. 585 (Motion for Ruling).) Now that the Sixth Circuit has affirmed the Court's judgments in this case—including the imposition of restitution and other financial obligations—the Court is prepared to address these motions.

---

[4] Portions of the individual amounts of restitution assessed against Hills, Alqsous, and Al-Madani were to be satisfied, jointly and severally, between the three defendants. The defendants were also directed to pay fines and special assessments.

## II. GOVERNING LAW AND DISCUSSION

Ordinarily, once a criminal defendant has satisfied the conditions of his bond, the court must "exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody." Fed. R. Crim. P. 46(g). But under specified circumstances, money deposited with the court for the purposes of bond may be applied to a criminal fine or restitution:

> On motion of the United States attorney, the court shall order any money belonging to and deposited by or on behalf of the defendant with the court for the purposes of a criminal appearance bail bond (trial or appeal) to be held and paid over to the United States attorney to be applied to the payment of any assessment, fine, restitution, or penalty imposed upon the defendant. The court shall not release any money deposited for bond purposes after a plea or a verdict of the defendant's guilt has been entered and before sentencing except upon a showing that an assessment, fine, restitution, or penalty cannot be imposed for the offense the defendant has committed or that the defendant would suffer an undue hardship. This section shall not apply to any third party surety.

28 U.S.C. § 2044.

By its express terms, § 2044 has no application to third party sureties. "Although the term 'third party surety' is often used in the context of detention hearings to mean a bail bondsman or other corporate entity, a plain reading of Section 2044 reveals that this exclusion of third party sureties includes private individuals . . . ." *United States v. Gonzalez*, No. 11-cr-80211, 2013 WL 654918, at *4 n.5 (S.D. Fla. Feb. 21, 2013); *see United States v. Hughes*, No. 3:15-cr-11, 2017 WL 2462725, at *2 (S.D. Tex. June 6, 2017) (wife found to be third party surety); *United States v. Bogart*, 490 F. Supp. 2d 885, 908 (S.D. Ohio 2007) ("If a defendant is the owner of the [bond] funds, then . . . the Court may order that the bail money be applied to a restitution order against him. . . . If [d]efendant did not have title to the funds, then they cannot be used to satisfy [d]efendant's restitution obligations.") (citing *United States v. Equere*, 916 F. Supp. 450, 452 (E.D. Pa. 1996) ("Section 2044 grants courts authority to transfer bail funds if a defendant's own money

5

has been used to post bond. The statute, however, does not extend such authority to a situation like the present case, in which a third party, not the defendant, has provided his own money to post defendant's bail.") (citations omitted)).

Given this limitation, courts have held that the applicability of § 2044 "requires two showings: (1) that the money was deposited by the defendant or on the defendant's behalf; and (2) that the money belongs to the defendant." *Hughes*, 2017 WL 2462725, at *1 (citing *United States v. Harris*, No. 95-180, 1996 WL 2921200, at *1 (E.D. La. May 29, 1996)). Therefore, in order to rule on the government's counter-motion, the Court must determine whether the bond money belongs to third-parties.

**A. The Government has the Burden of Proof**

The parties do not address the question of who has the burden to prove, under § 2044, that the posted bond money belongs to defendants, and the Court's independent research failed to identify a circuit court that has reached this issue. Nevertheless, numerous district courts are in agreement that the burden rests with the government to establish ownership of the bond money by a preponderance of the evidence. *See United States v. Arnold*, No. 1:18-cr-30, 2020 WL 957415, at *3 (N.D. Miss. Feb. 27, 2020); *Hughes*, 2017 WL 2462725, at *1; *Gonzalez*, 2013 WL 654918, at *3–4. The Court agrees with the reasoning of these courts that "to place the burden of demonstrating ownership of funds on the [g]overnment [is] consistent with how the courts have interpreted sentencing law." *Gonzalez*, 2013 WL 654918, at *4 (collecting cases resolving factual sentencing disputes by a preponderance of the evidence).

6

### B. The Government's Proofs as to Each Defendant

With respect to the issue of ownership of the posted funds, each defendant signed his appearance bond as the sole surety, attesting to the fact that "I, the defendant—and each surety—declare under penalty of perjury that . . . all owners of the property securing this appearance bond are included on the bond[.]" (*See, e.g.*, Doc. No. 18 at 2.) Each defendant further declared that the "property [was] not subject to claims" and that he would not "sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond [was] in effect." (*See, e.g., id.*) Defendants also signed the bonds "declar[ing] under penalty of perjury that [the] information [contained in the appearance bond was] true." (*Id.*) The government argues that defendants' representations under oath that they were the sole owners of the property offered to secure the bonds constitute strong evidence that the money deposited by each defendant belongs to them. The Court agrees.

#### 1. Al-Madani

As previously noted, Al-Madani did not file an opposition to the government's § 2044 motion. Al-Madani declared under penalty of perjury that he was the sole owner of the bail money posted to secure his pre-trial release, and there is no evidence suggesting that a third-party has an ownership interest in these funds. The Court, therefore, finds that the government has met its burden. The government's motion is granted as to Al-Madani, and the bond monies are directed to be applied to any outstanding financial obligations owed by this defendant.

#### 2. Hills

Hills also failed to lodge an objection to the government's motion. Nevertheless, a third-party individual named Sharron Brown filed a *pro se* notice that provided, in part, that she was

"requesting the release of the $150,000.76 secured bond that [she] posted for Edward R. Hills (Entered 10/28/2016)." (Doc. No. 364.) Brown did not supply the Court with an affidavit attesting to the ownership of the funds, and she failed to come forward with any other evidence, such as financial records, that would point to her as the true owner. Even if the Court were to credit Brown's unsupported representation, the Court, at best, would find that Brown has established only that she posted the money on behalf of Hills, who was in custody at the time the money was posted. Such as showing is insufficient to raise any question as to the government's proof regarding the ownership of the posted funds. The government's motion to apply Hills' bond money to satisfy any outstanding financial obligations is granted.

       3. *Alqsous*

By his motion, Alqsous seeks the return of both the cash and the real property securing his substitute appearance bond. (*See* Doc. No. 110.) As an initial matter, Alqsous argues that he is entitled to the return of the real property because the plain language of § 2044 is limited to "*money belonging to and deposited by or on behalf of the defendant[.]*" (Doc. No. 376 at 5, quoting 28 U.S.C. § 2044, emphasis added.) The government does not address Alqsous' argument regarding the real property at issue, and further fails to explain why the Court must not give effect to the plain language of the statute. *See Mitchell v. Chapman*, 343 F.3d 811, 825–26 (6th Cir. 2003) (reviewing courts must begin with the statute's plain language, and resort to congressional intent or legislative history only when the language is unclear) (citation omitted). Accordingly, the Court orders the release of the deed to the real property that partially secured the substituted appearance bond. (*See* Doc. No. 110, Ex. A, at 3.)

Alqsous also seeks the return of the $50,646.83 in cash that he now claims was deposited

8

by his fiancé, Dr. Jennifer DiPiero. In support, he offers correspondence between defense counsel and the Court's financial officer identifying Jennifer DiPiero as the individual who posted the original $250,000.00 in cash on behalf of Alqsous. (*See* Doc. No. 376-1.) But as the Court has already noted, evidence that an individual brought the cash to the Clerk establishes only that the individual posted the money on behalf of the defendant. It does not establish ownership in the bond money.[5] Balanced against Alqsous' showing is the fact that Alqsous not once, but twice, represented under penalty of perjury that the money belonged to him and him alone, free of any lien or claim of another. (*See* Doc. No. 22 at 2; Doc. No. 110 at 2.) Moreover, in 2020, Alqsous relied on his cash bond—as demonstrating *his* strong ties to the community—in support of his motion for compassionate release. (Doc. No. 583 (Motion for Compassionate Release) at 13 ["And while Dr. Alqsous does have ties to Jordan, his fiancé and what remains of *his assets* remain here in the District. In fact, *there remains a bond secured by over $50,000.00 in cash* and equity in real estate on Dr. Alqsous."] (emphasis added).)

Further, at no time did either Alqsous or Dr. DiPiero attempt to establish Dr. DiPiero as a surety on the substituted appearance bond. And while Alqsous supports his motion with case law requiring the release of bond funds owned by third-parties, in each of those cases it was either undisputed, or established by financial records, that the bond money belonged to someone other than the defendant. *See, e.g., United States v. DiPofi*, Nos. 04-80707, 07-50695, 2008 WL

---

[5] Such a showing carries even less weight as the record establishes that a significant portion of the initial $250,000.00 was returned, by agreement of the parties, not to Jennifer DiPiero, but to Phyllis DiPiero, who has not made a claim on the bond money and also did not attempt to establish herself as a surety.

2622954, at *2 (E.D. Mich. July 3, 2008)[6] (noting that the government "has not pointed to any evidence . . . which satisfactorily contests the sworn testimony . . . or challenges the financial records that were produced by [defendant's parents] to support" their claim to the bond money); *United States v. Sparger*, 79 F. Supp. 2d 714, 719 (W.D. Tex. 1999) (records established that bond money was paid out of attorney's retainer); *see also United States v. Salyer*, No. 2:10-cr-61, 2014 WL 412088, at *3–5 (E.D. Cal. Feb. 3, 2014) (declarations and bank records demonstrated that the cash bond was from defendant's sister's trust).

The Court finds that the government has met its burden of demonstrating by a preponderance of the evidence that the $50,646.83 in cash supporting Alqsous' substituted appearance bond was offered on Alqsous' behalf and belonged to him. Accordingly, it is appropriate to apply these cash funds to any outstanding financial obligations owed by Alqsous.

### III. CONCLUSION

For the foregoing reasons, the government's motion for a ruling (Doc. No. 585) is GRANTED. Further, Alqsous' motion to release bond (Doc. No. 358) and the government's counter-motion for an order requiring bond to be used to satisfy defendants' financial obligations (Doc. No. 359) are each GRANTED IN PART.

The Clerk is DIRECTED to return to Alqsous the deed to the real property securing Alqsous' substituted appearance bond. (*See* Doc. No. 110, Ex. A, at 3.) The Clerk is further DIRECTED to apply the cash used to secure each defendant's appearance bond to any unsatisfied financial obligations owed by Al-Madani, Hills, and Alqsous, respectively. (*See* Doc. Nos. 18, 30,

---

[6] Alqsous inaccurately represents *DiPofi* as Sixth Circuit authority. (*See* Doc. No. 376 at 4–5.) Rather, it was an unreported decision from a district court in the Eastern District of Michigan. In any event, the decision is easily distinguished and provides no authority, binding, persuasive, or otherwise.

110.) As to each defendant, once restitution and any Court-ordered financial obligations are satisfied, any remaining funds used to secure that defendant's appearance at trial should be returned to that respective defendant.

**IT IS SO ORDERED**.

Dated: April 15, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**